UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

```
-----------------------------------------------------------------X
                                          :
GARY PETERSON, et al.,                    :
                                          :
                      Plaintiffs,         :       Case No. 13-cv-170 (RLW)
                                          :
       - against -                        :
                                          :
TRANSPORT WORKERS UNION OF                :
AMERICA, AFL-CIO,                         :
                                          :
                      Defendant.          :
                                          :
-----------------------------------------------------------------X
```

## DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT
## OF ITS MOTION TO DISMISS THE COMPLAINT

Michael L. Winston
Evan Hudson-Plush
COHEN, WEISS and SIMON LLP
330 West 42nd Street
New York, New York 10036
Telephone: (212) 563-4100
Facsimile:  (212) 695-5436
(admitted pro hac vice)

Richard S. Edelman
O'DONNELL, SCHWARTZ &
ANDERSON, P.C.
1900 L Street, N.W., Suite 800
Washington, DC 20036
Chicago, Illinois 60602
Telephone: (202) 898-1707
Facsimile: (202) 682-9276
D.C. Bar #: 416348

00275082.1

# TABLE OF CONTENTS

INTRODUCTION ..................................................................................................... 1

BACKGROUND ...................................................................................................... 3

    The Parties and Related Information ................................................................. 3

    American's Bankruptcy; the TWU-American 1113 Negotiations; AMFA Raids.............. 5

    American's Planned Bankruptcy Exit.................................................................. 7

    The Amended Complaint ................................................................................ 8

ARGUMENT ......................................................................................................... 9

I.     STANDARD OF REVIEW ......................................................................... 9

II.    PLAINTIFFS LACK STANDING TO SEEK PROSPECTIVE RELIEF AND
THE PROSPECTIVE RELIEF SOUGHT SHOWS THAT THE CLAIMS ARE
NOT RIPE, AND THE RELIEF IS CONTRARY TO GOVERNING LABOR
LAW ................................................................................................... 10

    A.    The Plaintiffs Lack Standing and Thus the Court Lacks Jurisdiction Over
This Case........................................................................................ 11

    B.    The Requested Relief Is Not Ripe ...................................................... 17

    C.    The Requested Relief Conflicts with Labor Law and NMB Jurisdiction............ 18

III.   PLAINTIFFS HAVE FAILED TO STATE A CLAIM UNDER RULE 12(b)(6)........... 20

    A.    Plaintiffs' DFR Claim Fails as a Matter Of Law .................................... 20

        1.    Plaintiffs' Failure to Allege That TWU Caused Them Harm is
Fatal to Their DFR Claim ...................................................... 21

            (a)    Plaintiffs Do Not Allege That They Suffered Any Injury
Caused By Purported TWU Misconduct ..................................... 21

            (b)    Plaintiffs Do Not Allege That "But For" TWU's Actions,
They Would Have Achieved a Better Agreement ........................ 23

        2.    The DFR Allegations Make No Sense ...................................... 25

    B.    The Amended Complaint Does Not State an LMRDA Claim............................ 27

IV.   THE MATTER SHOULD BE STAYED BECAUSE THE PLAINTIFFS FAILED
TO EXHAUST INTERNAL UNION REMEDIES........................................... 30

CONCLUSION....................................................................................................... 32

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Ackley v. Western Conference of Teamsters*,
    958 F.2d 1463 (9th Cir. 1992) ..................................................................20, 24, 25

*Acosta Orellana v. CropLife Int'l*,
    711 F. Supp. 2d 81 (D.D.C. 2010)...............................................................................26

*Acri v. Int'l Ass'n of Machinists*,
    781 F.2d 1393 (9th Cir. 1986) ................................................................20, 24, 25

*\*Air Line Pilots Ass'n v. O'Neill*,
    499 U.S. 65 (1991)...............................................................................................19, 20

*ALPA v. DOT*,
    880 F.2d 491 (D.C. Cir. 1989)............................................................................21

*AMFA v. TWU Local 514*,
    98 F.3d 597 (10th Cir. 1996) ............................................................................5

*Anderson v. United Paperworkers Int'l Union*,
    641 F.2d 574 (8th Cir. 1981) .............................................................................20, 24

*Andraszek v. Rochester Tel. Workers*,
    246 F. Supp. 2d 174 (W.D.N.Y. 2003) ...............................................................5

*Angel v. United Paperworkers Int'l Union (PACE) Local 1967*,
    181 L.R.R.M. (BNA) 2485 (6th Cir. 2007) ..............................................................25

*\*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)................................................................................ *passim*

*Auerbach v. Bd. of Educ. of the Harborfields Cent. School Dist.*,
    136 F.3d 104 (2d Cir. 1998)........................................................................................17

*Baird v. Holway*,
    539 F. Supp. 2d 79 (D.D.C. 2008) .....................................................................3

*Barrett v. Thorofare Markets, Inc.*,
    452 F. Supp. 880 (W.D. Pa. 1978)........................................................................23, 25

*Bazaraian Int'l v. Desarrollos Aerohotelco*,
    793 F. Supp. 2d 124 (D.D.C. 2011) ..................................................................12

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007).............................................................................10, 22

*\*Bunz v. Moving Picture Ops. Local 224*,
  567 F.2d 1117 (D.C. Cir. 1977) ......................................................................29

*Burlington N. & Santa Fe Ry. Co. v. BMWE*,
  93 F. Supp. 2d 751 (N.D. Tex. 2000) ..............................................................18

*Calhoon v. Harvey*,
  379 U.S. 134 (1964)....................................................................................28, 30

*Car Carriers, Inc. v. Ford Motor Co.*,
  745 F.2d 1101 (7th Cir. 1984) ........................................................................26

*Carothers v. McCarthy*,
  705 F. Supp. 687 (D.D.C. 1989) .....................................................................29

*\*Carothers v. Presser*,
  818 F.2d 926 (D.C. Cir. 1987) ............................................................28, 29, 30

*\*Clapper v. Amnesy Int'l USA*,
  133 S. Ct. 1138 (2013).................................................................11, 12, 13, 16

*Clayton v. UAW*,
  451 U.S. 679 (1981)....................................................................................31, 32

*Conn v. GATX Terminals Corp.*,
  18 F.3d 417 (7th Cir. 1994) ............................................................................27

*\*Deboles v. Trans World Airlines, Inc.*,
  552 F.2d 1005 (3d Cir. 1977)............................................................20, 21, 23

*DelCostello v. IBT*,
  462 U.S. 151 (1983)........................................................................................22

*Dura Pharmaceuticals, Inc. v. Brouda*,
  544 U.S. 336 (2005)........................................................................................21

*EEOC v. St. Francis Xavier Parochial Sch.*,
  117 F.3d 621 (D.C. Cir. 1997) ........................................................................10

*Fair Employment Council of Greater Wash. v. BMC Mktg. Corp.*,
  28 F.3d 1268 (D.C. Cir. 1994) ........................................................................11

*Fed. Exp. Corp. v. ALPA*,
  67 F.3d 961 (D.C. Cir. 1995) ..........................................................................12

*Ferguson v. Int'l Ass'n of Bridge Workers,*
  854 F.2d 1169 (9th Cir. 1988) ..................................................................5

*First Capital Asset Mgmt. v. Satinwood,*
  385 F.3d 159 (2d Cir. 2004)........................................................... *passim*

*Genesis Healthcare Corp. v. Symczyk,*
  133 S. Ct. 1523 (2013)................................................................................9

*George v. USPS,*
  No. 04-cv-1073, 2006 WL 798924 (D. Conn. Mar. 28, 2006) ...............................22

*Grand Lodge of Police v. Ashcroft,*
  185 F. Supp. 2d 9 (D.D.C. 2001) ................................................... *passim*

*Green v. Obergfell,*
  121 F.2d 46 (D.C. Cir. 1941) ............................................................18, 19

*Gurton v. Arons,*
  339 F.2d 371 (2d Cir. 1964)....................................................................19

*Gwin v. Nat'l Marine Engineers Beneficial Ass'n,*
  966 F. Supp. 4 (D.D.C. 1997), *aff'd,* 159 F.3d 636 (D.C. Cir. 1998)....................22

*Hamilton v. Geithner,*
  743 F. Supp. 2d 1 (D.D.C. 2010) ...............................................................9

*Herbert v. Nat'l Acad. of Sciences,*
  974 F.2d 192 (D.C. Cir. 1992).................................................................9

*\*Hines v. Anchor Motor Freight, Inc.,*
  424 U.S. 554 (1976)...........................................................................20, 22

*Hinton v. Corr. Corp. of Am.,*
  624 F. Supp. 2d 45 (D.D.C. 2009) ...........................................................10

*Hohri v. United States,*
  782 F.2d 227 (D.C. Cir. 1986), *vacated on other grounds,* 482 U.S. 64 (1987) ....................9

*Howard v. Gutierrez,*
  474 F. Supp. 2d 41 (D.D.C. 2007) ...........................................................3

*Humphrey v. Moore,*
  375 U.S. 335 (1964)...........................................................................22

*IAM v. Eastern Air Lines,*
  849 F.2d 1481 (D.C. Cir. 1988)...............................................................18

iv

*Inlandboatmens Union v. Dutra Group*,
    279 F.3d 1075 (9th Cir. 2002) ........................................................................10

*Lierboe v. State Farm Mut. Auto. Ins. Co.*,
    350 F.3d 1018 (9th Cir. 2003) .......................................................................16

*Livent, Inc. v. Noteholders Sec. Litig.*,
    151 F. Supp. 2d 371 (S.D.N.Y. 2001).............................................................26

*LoBue v. Christopher*,
    82 F.3d 1081 (D.C. Cir. 1996) .......................................................................16

*Local 48 v. Carpenters*,
    920 F.2d 1047 (1st Cir. 1990) .......................................................................19

*Local 561-565 v. TWU*,
    No. 13 C 01451 (N.D. Ill.) and http://www.local591.com/index ...............................4

*Los Angeles v. Lyons*,
    461 U.S. 95 (1983)........................................................................11, 12, 16

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992)......................................................................11, 12, 16

*Maoilo v. Klipa*,
    655 F. Supp. 1139 (W.D. Pa. 1987)................................................................30

*Marcoux v. Am. Airlines, Inc.*,
    645 F. Supp. 2d 68 (E.D.N.Y. 2008), *aff'd sub. nom.*
    *Lindsay v. Ass'n of Prof'l Flight Attendants*, 581 F.3d 47 (2d Cir. 2009).........................5, 19

*Marcucilli v. Am. Airlines*,
    No. 04-40244, 2007 WL 713146 (E.D. Mich. Mar. 7, 2007) .................................22

*Marquez v. Screen Actors Guild*,
    525 U.S. 33 (1998)........................................................................20

*Meader v. District Lodge #4*,
    786 F. Supp. 95 (D. Me. 1992) .......................................................................5

*Mylan Labs v. Akzo, N.V.*,
    770 F.Supp. 1053 (D. Md. 1991) ....................................................................26

*O'Shea v. Littleton*,
    414 U.S. 488 (1974)........................................................................12, 16

*Pearson v. Dist. of Columbia*,
    644 F. Supp. 2d 23 (D.D.C. 2009) ..................................................................10

*Pierce v. Bahr*,
    No. Civ. 96-0680, 1996 WL 33675196 (D.D.C. May 9, 1996) .................................................32

*Rakestraw v. United Airlines*,
    981 F.2d 1524 (7th Cir. 1992) ..................................................................................21, 27, 30

*Rizzo v. Goode*,
    423 U.S 362 (1976)....................................................................................................................12

*Rock Energy Coop. v. Vill. of Rockton*,
    614 F.3d 745 (7th Cir. 2010) ....................................................................................................17

*Rosier v. Holder*,
    833 F. Supp. 2d 1 (D.D.C. 2011).................................................................................................9

*RSM Prod. Corp. v. Freshfields Bruckhaus Deringer U.S. LLP*,
    682 F.3d 1043 (D.C. Cir. 2012) ...........................................................................................10, 26

*Sawyers v. IAM*,
    279 F.Supp. 747 (E.D. Mo. 1967)...............................................................................................5

*Schalk and Owens v. TWU*,
    2007 WL 1310171 (S.D.N.Y. May 3, 2007) ........................................................................5, 6

*Shelley v. Am. Postal Workers Union*,
    775 F. Supp. 2d 197 (D.D.C. 2011) ...........................................................................................19

*Skillsky v. Lucky Stores, Inc.*,
    893 F.2d 1088 (9th Cir. 1990) ...................................................................................................22

*Southern Ohio Coal v. UMW*,
    551 F.2d 695 (6th Cir. 1977) .....................................................................................................18

*Spellacy v. Air Line Pilots Ass'n*,
    156 F.3d 120 (2d Cir. 1998).................................................................................................20, 24

*Stevens v. Nw. Ind. Dist. Council of Carpenters*,
    20 F.3d 720 (7th Cir. 1994) ......................................................................................................31

*Swatts v. USW*,
    808 F.2d 1221 (7th Cir. 1986) ...................................................................................................19

*Switchmen's Union v. NMB*,
    320 U.S. 297 (1943).....................................................................................................................20

*Teamsters Local 391 v. Terry*,
    494 U.S. 558 (1990).....................................................................................................................22

*Texas v. United States*,
    523 U.S. 296 (1998) ...................................................................................................17

*Trusted Integration, Inc. v. United States*,
    679 F. Supp. 2d 70 (D.D.C. 2010) ...........................................................................10

*USW v. NLRB*,
    692 F.2d 1052 (7th Cir. 1982) ..................................................................................22

*Vanover v. Hantman*,
    77 F. Supp. 2d 91 (D.D.C. 1999), *aff'd* 38 F. App'x 4 (D.C. Cir. 2002)..................12

*Virginian Ry. v. System Fed'n No. 40*,
    300 U.S. 515 (1937) ...................................................................................................18

*Williams v. Romano Bros. Beverage Co.*,
    939 F.2d 505 (7th Cir. 1991) ....................................................................................20

*Winter v. Local Union No. 639*,
    569 F.2d 146 (D.C. Cir. 1977) .............................................................................31, 32

## STATUTES, REGULATIONS AND RULES

15 U.S.C. § 18a .......................................................................................................................8

29 U.S.C. § 113 .....................................................................................................................18

29 U.S.C. §411 ................................................................................................................28, 31

45 U.S.C. §152 ....................................................................................................3, 13, 14, 19

45 U.S.C. § 181 .....................................................................................................................19

29 C.F.R. § 1206.2 ................................................................................................................14

Fed. R. Evid. 201(d) .............................................................................................................10

Fed. R. Civ. P. 12 ......................................................................................................... *passim*

## INTRODUCTION

Defendant Transport Workers Union of America ("TWU" or the "International") submits this brief in support of its motion to dismiss plaintiffs' class-action first amended complaint ("FAC" or "Amended Complaint") under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) or, in the alternative, to stay this action.

After American Airlines ("American" or "AA" or the "Company") filed for bankruptcy court protection in November 2011, it moved under Section 1113 of the Bankruptcy Code to reject its various collective bargaining agreements ("CBAs") with TWU – including the one covering the AA mechanics (in the "Mechanics and Related Employees" craft or class ("M&R")). TWU and American entered concessionary bargaining and reached agreement in 2012 for all CBAs with American, avoiding Section 1113 contract rejections. The agreements were ratified by the members of all the AA classes or crafts represented by TWU, including the M&R craft or class. The ratified agreements were thereafter approved by the bankruptcy court. The five named plaintiffs ("Plaintiffs") – TWU-represented mechanics at American – did not file any objections to the TWU-AA M&R agreement in the bankruptcy court.

Plaintiffs bring this lawsuit on behalf of a purported class and contend that during the 2012 negotiations with American and the agreement ratification process, TWU violated its duty of fair representation ("DFR") and the Labor-Management Reporting and Disclosure Act ("LMRDA"), 29 U.S.C. §401 *et seq.*, by purportedly "favoring" the American mechanics based in Tulsa, Oklahoma over the other AA mechanics and by failing to hold meetings outside of the AA Tulsa mechanics base to educate members about the proposed mechanic CBA. Plaintiffs do not seek any damages or to invalidate the M&R CBA; instead they seek (1) a prospective injunction to control TWU's handling of "future" – and unscheduled – negotiations with American over M&R terms and conditions of employment, and (2) declaratory relief.

1

For a number of reasons, Plaintiffs' claims cannot survive legal analysis.

*First*, Plaintiffs lack standing to assert claims seeking only prospective injunctive and declaratory relief.  To have standing, Plaintiffs must allege an injury in fact that is real, and impending, not speculative or hypothetical.  They have not done that because among other things (a) under the current representation situation, no negotiations will occur for at least three years, (b) TWU has entered a "joint council" agreement with another union under which the joint council may very well replace TWU as the AA M&R bargaining representative, and (c) two other unions are seeking to replace TWU as the AA M&R bargaining representative.  There are thus no planned immediate TWU-AA negotiations for the mechanics and there may never be such negotiation.

*Second*, for similar reasons, Plaintiffs' claims are also not ripe for review.

*Third*, the particular prospective injunctive relief sought by Plaintiffs – contrary to basic labor law tenets and jurisdiction of the National Mediation Board ("NMB") over representation matters here – would enmesh this court in and unduly circumscribe TWU's handling of negotiations.

*Fourth*, Plaintiffs have failed to state a cognizable DFR or LMRDA claim.  In their DFR claim, Plaintiffs have not identified any injury that they allegedly suffered as a result of TWU's purported misconduct, as they must to state a DFR claim.  Plaintiffs' DFR claim is subject to dismissal also because the allegations of purported wrongdoing by TWU are implausible.  Plaintiffs' LMRDA claim is also flawed as Plaintiffs have not alleged, in accord with case law within the D.C. Circuit, that they were denied a "meaningful vote" during the contract ratification process – the basis for Plaintiffs' LMRDA claim.

*Fifth*, even if the Complaint is not subject to dismissal, it should be stayed because Plaintiffs commenced and are in the process of exhausting – but have not yet completed exhausting – mandatory internal union remedies.

Briefly put, Plaintiffs' Amended Complaint is defective and should be dismissed or stayed.

## BACKGROUND[1]

### The Parties and Related Information

**TWU:**  TWU is an international labor union.  *See* FAC ¶7.  It serves as the exclusive collective bargaining representative under the Railway Labor Act ("RLA"), 45 U.S.C. §151 *et seq*., for seven "crafts or classes"[2] of employees at American.  *See* FAC ¶18; RLA Section 2 Ninth, 45 U.S.C. §152 Ninth.  TWU's representation of American employees (including the mechanics) dates to the 1940's.  *See, e.g.*, *American Airlines,* 1 N.M.B. 394 (1945); *American Airlines,* 29 N.M.B. 240, 251 (2002).[3]

This case concerns one of the seven TWU-represented crafts or classes at American:  the "Mechanics and Related Employees" craft or class (or "M&R"), *see* FAC ¶18.  Aircraft mechanics at American are either line mechanics or overhaul base mechanics; line mechanics work on aircraft at American airport locations; overhaul base mechanics perform

---

[1] TWU recites the relevant allegations from the Amended Complaint, as supplemented by facts drawn from documents Plaintiffs rely upon in the Amended Complaint or that are subject to judicial notice, such as publicly filed documents.  *See* discussion *infra* at 9-10 & n.3.

[2] An RLA craft or class is similar to a bargaining unit under the National Labor Relations Act, 29 U.S.C. §159.

[3] Consistent with Rule 12(b)(6), this Court may take judicial notice of agency and court decisions.  *See Baird v. Holway*, 539 F. Supp. 2d 79, 84 n.2 (D.D.C. 2008) (it is a "well-settled" proposition that "the decision of another court or agency . . . is a proper subject of judicial notice"); *Howard v. Gutierrez*, 474 F. Supp. 2d 41, 47 (D.D.C. 2007) (same).

major aircraft overhauls at American bases located at Tulsa, Oklahoma, Fort Worth, Texas ("AFW") and the Dallas-Fort Worth Airport ("DWH"), *see* FAC ¶¶21-23.  The M&R class or craft also includes facilities mechanics, who perform mechanical work not on aircraft but on other AA facilities, as well as certain other ground service personnel, *see The Railway Labor Act* 167 (Chris. A Hollinger, ed., 3d ed. 2012)

      **Plaintiffs:**  The five named Plaintiffs are mechanics who are members of the M&R craft and class.  *See* FAC ¶¶2-6.  Certain Plaintiffs also hold TWU local officer positions (which the Amended Complaint does not mention).[4]

      **Owens (referenced in Amended Complaint) and AMFA:**  Robert Owens is the former "president of TWU Local 562" referenced in the Amended Complaint (¶45), *see* Winston Decl. Ex. 3 (declaration signed by Owens as President of TWU Local 562).  In September 2003, Owens and Charles Schalk (a co-officer of Owens) were removed from the Local 562 offices they held (Owens was then Local 562 Secretary-Treasurer).  FAC ¶32.  Owens had posted on an internet site statements that advocated replacing TWU with the Aircraft Mechanics Fraternal Association ("AMFA") – a union then seeking to displace TWU as the bargaining representative for the American M&R group.  *See Schalk and Owens v. TWU*, 2007 WL 1310171, at *7

---

[4] Although not material to the instant motion, Plaintiffs Gary Peterson and Gary Schaible have been, since March 22, 2013, the President and Vice President, respectively, of TWU Local 591, which handles representation matters for certain American line mechanics; prior to that, Peterson and Schaible were President and Vice President, respectively, of Local 565 which handled representation matters for certain line and base overhaul mechanics at American.  *See* Docket No. 9-3 (G. Peterson Decl.); Complaint (signed by Peterson as President of Local 565) in *Local 561-565 v. TWU*, No. 13 C 01451 (N.D. Ill.) and http://www.local591.com/index .cfm?zone=/unionactive/officers.cfm.  Plaintiff Larry Pike is currently President of Local 567 which handles representation matters for certain American base overhaul mechanics.  *See* http://www.twu567.org/uploadpages/officers.html.  The *Local 561-565* complaint is a publicly filed document and is attached for ease of reference to the accompanying Declaration of Michal L. Winston ("Winston Decl.") as Exhibit 1; *see* discussion *infra* at 9-10.  Screen captures of the webpages cited above are included as Exhibit 2 to the Winston Declaration.

(S.D.N.Y. May 3, 2007) (finding that "there is no doubt that [Owens] posted the [pro-AMFA notices"). The two Local 562 officers together challenged their removal from office in federal court; the court upheld their removal. *See Schalk and Owens*, 2007 WL 1310171, at *7 ("Any legally organized and recognized organization has the right to protect itself from outside attacks").[5] Owens is currently a TWU Local 591 co-officer with Peterson and Schaible, *see* n.4 & Winston Decl. Ex. 2.

**American's Bankruptcy; the TWU-American 1113 Negotiations; AMFA Raids**

Following the catastrophic events of 9/11, American lost billions of dollars. *See Marcoux v. Am. Airlines, Inc.*, 645 F. Supp. 2d 68, 71 (E.D.N.Y. 2008), *aff'd sub. nom. Lindsay v. Ass'n of Prof'l Flight Attendants*, 581 F.3d 47 (2d Cir. 2009). By early 2003, with its condition rapidly worsening, the Company threatened to file for bankruptcy unless all three unions representing its employees[6] entered into and ratified concessionary CBAs. *See Marcoux*, 645 F. Supp. 2d at 72-74. All three unions reached and ratified concessionary agreements with the Company. *See id.* at 80-81, 85.

TWU Local 562, with Schalk and Owens as officers, filed a lawsuit in federal court seeking to enjoin implementation of the 2003 TWU-American M&R agreement; the court denied the motion for a preliminary injunction and then dismissed the lawsuit on July 31, 2003, *see Schalk and Owens*, 2007 WL 1310171, at *1. AMFA, seeking to take advantage of the

---

[5] Court have repeatedly found that officer or member dual unionism activity is not protected by the LMRDA. *See, e.g., AMFA v. TWU Local 514*, 98 F.3d 597 (10th Cir. 1996); *Mayle v. Laborers Int'l Union*, Local 1015, 866 F.2d 144 (6th Cir. 1988); *Ferguson v. Int'l Ass'n of Bridge Workers*, 854 F.2d 1169 (9th Cir. 1988); *Andraszek v. Rochester Tel. Workers*, 246 F. Supp. 2d 174 (W.D.N.Y. 2003); *Meader v. District Lodge #4*, 786 F. Supp. 95 (D. Me. 1992); *Sawyers v. IAM*, 279 F.Supp. 747 (E.D. Mo. 1967).

[6] The Allied Pilots Association ("APA") represents American's pilots and the Association of Professional Flight Attendants ("APFA") represents American's flight attendants. *See Marcoux*, 645 F. Supp. 2d at 72.

American economic downturn and the 2003 concessionary M&R agreement, commenced an
organizing drive to supplant TWU as the AA M&R bargaining representative; the drive failed,
*see Schalk and Owens*, 2007 WL 1310171, at *1, 2; FAC ¶29 (additionally stating that a 1998
AMFA raid on TWU for the M&R group also failed).

      On November 29, 2011, more than eight years after the 2003 CBAs were reached,
American and its affiliates filed for bankruptcy protection under Chapter 11 of the United States
Bankruptcy Code (the "Code"), *see* FAC ¶34.  On February 1, 2012, the Company presented
proposed concessionary modifications to the CBAs with TWU, *see* FAC ¶35.  Under American's
proposal, there would be a large reduction in the labor costs for each TWU craft and class which
translated into annual savings of approximately $212 million over a six-year term under the CBA
covering the AA mechanics – including through a headcount reduction of 4,200 mechanics.
Winston Decl. Ex. 4 (Bankr. Docket No. 2046 in *In re Am. Airlines*, No. 11-15463 (SHL)
(Bankr. S.D.N.Y.), AA's Br. in Support of its Section 1113 Motion, pp. 9-10); Winston Decl. Ex.
5 (Bankr. Docket No. 2041-51, Decl. of Mark L. Burdette in Support of AA's Section 1113
Motion, ¶19).

      After no concessionary agreements were reached, American, on March 27, 2012,
filed motions under Section 1113 of the Code to reject American's various CBAs with the three
unions, including the TWU-AA CBA covering the M&R unit.[7]  *See* FAC ¶36; Winston Decl. Ex.
6 (AA's Section 1113 Motion).

      Before the bankruptcy court ruled on the American Section 1113 motion
pertaining to the TWU CBAs, each TWU unit reached and ratified an agreement with American;

---

[7] American also sought concessions from APA and APFA – and moved to reject their CBAs
under Code Section 1113 when negotiations failed to result in a concessionary deal for the pilot
and flight attendant groups.  *See* Winston Decl. Ex. 6.

all of these CBAs were subsequently approved by the bankruptcy court. *See* FAC ¶66; Winston

Decl. Exs. 7, 8 (AA Bankr. Docket Nos. 3389, 4413).

During the TWU-AA negotiations for the M&R craft or class, American proposed

what has been labeled its "First Last Best Offer" ("LBO1"), which did not result in an

agreement; thereafter, American proposed what has been termed American's "Second Last Best

Offer" ("LBO2"), *see* FAC¶¶49, 50. LBO2 was ratified by the mechanics on August 8, 2012

(the "M&R CBA") and approved by the bankruptcy court on September 12, 2012. *See* FAC

¶¶37, 64, 66; Winston Decl. Ex. 8. None of the Plaintiffs filed an objection in the bankruptcy

court to challenge court approval of the M&R CBA, *see generally* Docket in AMR bankruptcy

(*In re Am. Airlines*, No. 11-15463 (SHL) (Bankr. S.D.N.Y.)).

In May 2012, AMFA again sought to benefit from the financial difficulties facing

the mechanics – who were again confronted with concessionary demands of American (this time

in bankruptcy court and employing Section 1113 of the Code to threaten CBA rejection if its

demands were not met) – by commencing yet another raid to try to displace TWU as the M&R

bargaining representative. *See* FAC ¶¶33-36. And again, as occurred with the AMFA 2003 raid,

*see supra* at 5-6, there is a lawsuit – the instant action – seeking to challenge the TWU

negotiated agreement and filed during the same time period of AMFA's organizing drive.

**American's Planned Bankruptcy Exit**

On May 10, 2013, the bankruptcy court approved American's merger with U.S.

Airways, *see* Winston Decl. Ex. 9 (Bankr. Docket No. 8096), and, by order dated June 7, 2013,

determined that the Confirmation Hearing on American's Plan of Reorganization ("POR") will

occur on August 15, 2013, *id.* Ex. 10 (Bankr. Docket No. 8614). American will also need to

secure Department of Justice ("DOJ") antitrust approval for the proposed merger. *See generally*

15 U.S.C. § 18a; Winston Decl. Ex. 11 (March 4, 2013 AA Press Release).

**The Amended Complaint**

Plaintiffs filed their initial complaint on February 6, 2013 and their Amended Complaint on March 27, 2013.

In the Amended Complaint, Plaintiffs contend that the line mechanics and the base mechanics at AFW and DWH – but not at Tulsa – support AMFA over TWU in AMFA's current organizing drive, *see* FAC¶¶30, 33, and that TWU:  (a) purportedly "favored" the AA Tulsa base mechanics over and "at the expense of" the other AA mechanics during the Section 1113 negotiations resulting in the M&R CBA, *see, e.g.*, FAC ¶¶40, 48, and (b) prior to member ratification, allegedly "fail[ed] to hold meetings outside of the Tulsa base that were intended to educate members about the proposed contract," *see* FAC ¶63.

The Amended Complaint contains two causes of action:  in Count I, Plaintiffs assert that TWU breached its DFR; in Count II, Plaintiffs contend that TWU violated LMRDA Section 101, 29 U.S.C. §411.  *See* FAC ¶¶71-74, 79-80.

In their prayer for relief, Plaintiffs do not seek any damages from TWU or ask that the M&R CBA be invalidated.  Instead, Plaintiffs request "a declaration" that TWU breached its DFR and the LMRDA and a prospective injunction "requiring [TWU] in *future* contract negotiations . . . with American" to conduct such negotiations in a particular way.[8]  FAC at pp. 15-16 (emphasis added).

---

[8] More specifically, Plaintiffs seek "a permanent injunction requiring [TWU] in future contract negotiations . . . with American" to:  "[r]efrain from participating in secret bargaining sessions" with American; negotiate with a "full complement" of the TWU negotiating committee (with certain exception); notify all members of the negotiating committee and any sub-negotiating committee "of any bargaining session and/or caucuses with the company" or of the committees; disclose "reasonably in advance of any contract ratification vote . . . the full and complete terms of [the] proposed contract"; "hold meetings at all stations . . .  if any meetings are held at any other station, for the purpose of educating members about the contents of a contract" on which the members will vote.  FAC at pp. 15-16.

For a number of reasons, as shown below, the Amended Complaint is subject to dismissal. *See Genesis Healthcare Corp. v. Symczyk*, 133 S. Ct. 1523 (2013) (because claim of named plaintiff was legally deficient, the plaintiff's collective action was "appropriately dismissed"); *infra* at 16 (citing additional cases).

## ARGUMENT

### I.   STANDARD OF REVIEW

Under a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), the plaintiff bears the burden to establish that the court has jurisdiction, *Grand Lodge of Police v. Ashcroft*, 185 F. Supp. 2d 9, 13 (D.D.C. 2001), and "[p]laintiff's factual allegations in the complaint . . . will bear closer scrutiny in resolving a 12(b)(1) motion" than in resolving a 12(b)(6) motion for failure to state a claim, *id.*  On a Rule 12(b)(1) motion, the court is not limited to the allegations in the complaint, *Hohri v. United States*, 782 F.2d 227, 241 (D.C. Cir. 1986), *vacated on other grounds*, 482 U.S. 64 (1987), but rather may consider other materials outside the pleadings to assist in its determination, *Grand Lodge*, 185 F. Supp. 2d at 14; *see Herbert v. Nat'l Acad. of Sciences*, 974 F.2d 192, 197 (D.C. Cir. 1992); *Rosier v. Holder*, 833 F. Supp. 2d 1, 5 (D.D.C. 2011) (Wilkins, J.) ("to access jurisdiction under Rule 12(b)(1), the Court is not limited to the confines of the complaint [and] may go outside the pleadings and consider evidence found in the record"); *Hamilton v. Geithner*, 743 F. Supp. 2d 1, 6 (D.D.C. 2010).

Under Rule 12(b)(6), a court construes the pleadings in the light most favorable to the nonmoving party, but the mere "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to state a claim. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *RSM Prod. Corp. v. Freshfields Bruckhaus Deringer U.S. LLP*, 682 F.3d 1043, 1052 (D.C. Cir. 2012) (conclusory allegations do not support a clam for relief).  To avoid dismissal, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim

to relief that is plausible on its face,'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, (2007)), and not merely "conceivable" or "speculative," *Twombly*, 550 U.S. at 555, 570.  The complaint must be dismissed if "the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct." *Iqbal*, 556 U.S. at 667, 679.

In considering a motion to dismiss under Rule 12(b)(6), the court may also consider, in addition to the facts in the complaint: (a) documents crucial to, attached to, or referred to in the complaint, *e.g.*, *Hinton v. Corr. Corp. of Am.*, 624 F. Supp. 2d 45, 46 (D.D.C. 2009); *see Inlandboatmens Union v. Dutra Group*, 279 F.3d 1075, 1083 (9th Cir. 2002) (considering CBA referenced in complaint), as well as (b) facts that are properly subject to judicial notice, *e.g.*, *EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624 (D.C. Cir. 1997); *Hinton*, 624 F. Supp. at 47.  Facts subject to judicial notice, under Federal Rule of Evidence 201(d), include matters of public record, *e.g.*, *Trusted Integration, Inc. v. United States*, 679 F. Supp. 2d 70, 76 (D.D.C. 2010), and court records in another court case, *e.g.*, *Pearson v. Dist. of Columbia*, 644 F. Supp. 2d 23, 45 n. 19 (D.D.C. 2009); *see also supra* at n.3.

## II.   PLAINTIFFS LACK STANDING TO SEEK PROSPECTIVE RELIEF AND THE PROSPECTIVE RELIEF SOUGHT SHOWS THAT THE CLAIMS ARE NOT RIPE, AND THE RELIEF IS CONTRARY TO GOVERNING LABOR LAW

In their Amended Complaint, Plaintiffs do *not* seek damages (they do not allege that they suffered any harm, *see infra* at 21-23) and never sought (either before the bankruptcy court or in the Amended Complaint) to challenge or invalidate the M&R CBA, *supra* at 7-8. Instead, Plaintiffs request prospective relief:  they seek "a permanent injunction" aimed at circumscribing TWU's handling of "future contract negotiations . . . with American," FAC at 15-16 (prayer for relief); *supra* at n.8 (describing broad scope of prospective injunction sought). Plaintiffs also ask for "a declaration" from the court that TWU breached its DFR and the LMRDA.

The requested relief – the prospective injunction and declaration – is flawed because Plaintiffs lack standing to assert claims for such relief, the claims are not ripe for review, and the relief is contrary to labor law principles and NMB jurisdiction over representation matters.

## A.    The Plaintiffs Lack Standing and Thus the Court Lacks Jurisdiction Over This Case

Article III of the United States Constitution limits the jurisdiction of federal courts to "Cases" or "Controversies." *Clapper v. Amnesy Int'l USA*, 133 S. Ct. 1138, 1146 (2013). A critical element of the case-or-controversy requirement is that the Plaintiffs must have "standing" to sue, *id.*, and the principal element of standing is the "injury in fact" requirement. *Grand Lodge*, 185 F. Supp. 2d at 13.

To establish "injury in fact," the Plaintiffs must have suffered an injury that is "concrete, particularized, and actual and imminent." *Clapper*, 133 S. Ct. at 1147. The injury may not be "speculative," *id.*, or "conjectural or hypothetical," *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). Further, where, as here, the Plaintiffs seek a prospective injunction or declaratory relief, Plaintiffs *cannot* rely solely on past injuries to demonstrate "injury in fact." *Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983); *Fair Employment Council of Greater Wash. v. BMC Mktg. Corp.*, 28 F.3d 1268, 1273 (D.C. Cir. 1994).[9] Instead, as the Supreme Court recently

---

[9] The fact that Plaintiffs seek declaratory relief as well as injunctive relief is of no moment to the standing analysis. Declaratory relief is subject to the identical test as prospective injunctive relief. *E.g.*, *Clapper*, 133 S. Ct. at 1142, 1147-48 (applying Article III standing test to both declaratory and injunctive relief); *Fed. Exp. Corp. v. ALPA*, 67 F.3d 961, 963 (D.C. Cir. 1995) (the "requirement of a case or controversy is no less strict when a party is seeking a declaratory judgment than for any other relief"); *Bazaraian Int'l v. Desarrollos Aerohotelco*, 793 F. Supp. 2d 124, 128 (D.D.C. 2011); *Grand Lodge*, 185 F. Supp. 2d at 15 n.4 ( "the Declaratory Judgment Act requires no more or less rigorous a showing of justiciability than the Constitution does"); *Vanover v. Hantman*, 77 F. Supp. 2d 91, 100 (D.D.C. 1999) ("a declaratory judgment is appropriate to declare the rights between the parties only where there is 'a very significant

"reiterated," the "threatened injury [to be stopped by the prospective injunction] must be *certainly impending* to constitute injury in fact and . . . [a]llegations of *possible* future injury are not sufficient." *Clapper*, 133 S.Ct. at 1147 (quotations omitted; emphasis in original); *Lyons*, 461 U.S. at 102 ("threat of injury must be both 'real and immediate'" and speculative allegations of future injury are not enough); *see O'Shea v. Littleton*, 414 U.S. 488, 496-500 (1974) (plaintiffs must show that they are likely to be subject to injury again).

Here, Plaintiffs' allegations fall far short of showing that they have standing. Plaintiffs have not even alleged that they are likely to be subject to the same purported "negotiation" injury in the future.  For this reason alone, Plaintiffs lack standing.  *See O'Shea*, 414 U.S. at 497 (no standing where no allegation that named Plaintiffs would again be subject to complained of practices); *see also Rizzo v. Goode*, 423 U.S 362, 372 (1976) (no standing where claim rests on what "policemen might do to them in the future").

In addition, Plaintiffs have no "real and immediate" "threat of injury," *Lyons*, 461 U.S. at 102, as they seek to enjoin actions that *might* be taken by TWU – possibly years from now – in *possible* future negotiations with American.  Any injury Plaintiffs would purportedly suffer in negotiations is thus both speculative, in the sense that the injury and negotiations may never happen, and is not "certainly impending," because even if it to happen, any injury would only occur at some "indefinite future time."  *Lujan*, 504 U.S. at 564 n.2.

The following describes the highly "speculative chain" of possible events, *Clapper*, 133 S. Ct. at 1150, that demonstrates that any potential injury to Plaintiffs "is simply too attenuated to be a real and immediate threat."  *Grand Lodge*, 185 F. Supp. 2d at 16.

---

possibility of future harm'; it is insufficient . . . to demonstrate only a past injury"), *aff'd* 38 F. App'x 4 (D.C. Cir. 2002).

As an initial matter, there is no "immediate" threat of any harm:  the terms of the

M&R CBA run through September 12, 2018, and can only be reopened for negotiations after

September 12, 2016 – well more than *three years* from now.  *See* Winston Decl. Ex. 12 (M&R

CBA Art. 47).  Thus, *if* nothing were to change from the current situation (in terms of TWU's

representation of AA mechanics and AA's status as a stand-alone carrier, *but see* discussion

below), no TWU-AA negotiations to amend the overall terms of the M&R CBA (and thus any

alleged potential injury) could occur until at the earliest three years from now, which cannot be

said to be "certainly impending."  *Clapper*, 133 S. Ct. at 1143.  *See* FAC (Plaintiffs do not [and

cannot] allege that any such negotiations are currently scheduled).

Further, for a number of reasons, the situation – for both American and TWU as

representative for the AA M&R craft or class – is highly uncertain; given this, future AA AA-

TWU negotiations for the mechanics are subject to numerous contingencies and any "injury in

fact" notion is implausible.

*First*, on May 28, 2013, the International Brotherhood of Teamsters (the "IBT")

filed an application with the NMB seeking a representation election among the members of the

AA M&R craft and class – to try to replace TWU as the bargaining representative of this

group.[10]  *See* Winston Decl. Ex. 13; *cf.* FAC ¶ 27.  AMFA also filed for intervenor status in any

such vote; while the NMB rejected AMFA's filing as insufficient, AMFA is advocating for

mechanics to "write in" AMFA in any representation election.  *See* Winston Decl. Ex. 14; *cf.*

FAC ¶ 33.  The NMB will now conduct an investigation of IBT's application and, if it finds that

a representation dispute exists, it will conduct an election to determine which union (if any) is

the bargaining representative of the American mechanics; for purposes here, while TWU

---

[10] The NMB has exclusive jurisdiction over RLA representation disputes, 45 U.S.C. §152
Ninth; *infra*  at 19-20.

believes it would prevail in any such vote, if it does not, it will no longer be the bargaining

representative for conducting negotiations with American on behalf of the AA M&R craft or

class – and thus Plaintiffs' requested relief would be moot.  29 C.F.R. § 1206.2; NMB

Representation Manual §§ 3.601, 4.1, 5.0, 12.0 to 15.0; *see also* 45 U.S.C. § 152, Ninth (RLA

provision governing NMB handling of representation disputes).

       *Second*, following American's emergence from bankruptcy, there are two other

developments that make Plaintiffs' relief request uncertain and probably irrelevant:  (a) TWU

entered into a "Joint Council" representation agreement with the International Association of

Machinists ("IAM")[11] under which the Joint Council would become the bargaining

representative for a joint AA-U.S. Airways M&R craft or class, and (b) a second NMB

representation dispute – concerning the AA-U.S. Airways M&R craft and class – may very well

arise.

       As described, American may merge with U.S. Airways; the IAM is the current

bargaining representative of the U.S. Airways M&R craft or class.  Winston Decl. Ex. 15 ¶2.  If

the American-U.S. Airways merger becomes effective – which is dependent on the bankruptcy

court approving American's POR, the DOJ also approving the merger, and the merger thereafter

closing – then, under the terms of a January 2013 Memorandum of Understanding (the "MOU")

between TWU, American and US Airways, TWU will within six months thereafter file a single

carrier application (or "single transportation system" application), Winston Decl. Ex. 16 (Bankr.

Docket No. 8095, ¶¶3, 4),  triggering an investigation and determination by the NMB regarding

whether, among other things, the two M&R crafts or classes at American Airlines and US

---

[11] The TWU-IAM Joint Council Agreement is Exhibit 15 to the Winston Declaration.

Airways, respectively,[12] constitutes a single M&R craft or class under the RLA for purposes of employee representation.  *See* NMB Representation Manual §§ 19.5 to 19.6.

        If there is a finding by the NMB that a single carrier exists among the M&R crafts and classes at the merged American/U.S. Airways carrier, there are two varying results (summarized above) regarding AA M&R mechanic representation that could likely arise and which further upend Plaintiffs' standing here:  (a) the Joint Council established under the TWU-IAM Agreement would likely replace TWU as AA M&R representative (and replace IAM as U.S. Airways M&R representative).  The Joint Council, not TWU, would conduct negotiations for the merged carrier mechanics; this means among other things that, while TWU will be involved in negotiating a new single collective bargaining agreement to cover all mechanics of the merged carrier, it will necessarily be working with the IAM in handling these negotiations under the new Joint Council structure,[13] *see* Winston Decl. Ex. 15;[14] and, (b) there could be another representation filing by one or more a unions, followed by an NMB conducted election – which would likely be between the TWU-IAM Joint Council and another union (or more than one) – to determine which union (if any) will represent the M&R employees of the combined carrier.  NMB Representation Manual § 19.602.  Under either scenario, TWU would no longer

---

[12] The IBT recently submitted a petition with the NMB seeking to displace the IAM as the bargaining representative for the M&R craft or class at US Airways.  Winston Decl. Ex. 17.

[13] Under the MOU, Winston Decl. Ex. 16, if there is an NMB single carrier finding, and TWU is the bargaining representative for the M&R craft or class, TWU will commence negotiations with the new, combined American Airlines for a joint collective bargaining agreement – covering all American/US Airways M&R members.  MOU ¶4.  But, as described herein, a TWU-IAM Joint Council, not TWU, would likely replace TWU as the AA M&R bargaining representative and conduct such negotiations.

[14] The TWU representatives involved in those negotiations may not even be the same ones who conducted the 2012 AA-TWU M&R negotiations.

continue as the bargaining representative for the mechanics at the single carrier; it would either be replaced by the Joint Council or possibly another union.

In short, the road to future TWU-American M&R negotiations – which Plaintiffs seek to control through a prospective injunction – is mined with numerous contingencies and uncertainties (such as a Joint Council replacing TWU as AA M&R representative and potentially two NMB representation elections, before any further AA M&R negotiations occur) and, a lack of immediacy (under the current situation, TWU-AA negotiations would not occur for at least three years from now). If and when future TWU-AA M&R negotiations will occur (that allegedly will harm Plaintiffs) is purely conjectural and dependent on the occurrence of a speculative chains of events; such negotiations are hence not "certainly imminent." As a result, Plaintiffs have failed to demonstrate a cognizable injury for standing purposes. *Clapper*, 133 S. Ct. at 1150; *Lujan*, 504 U.S. at 560-61 & n.2; *Lyons*, 461 U.S. at 102-103; *O'Shea*, 414 U.S. at 496-500; *Grand Lodge*, 185 F. Supp. 2d at 16.[15] And where, as here, none of the named Plaintiffs have standing, the court lacks jurisdiction over the case and it must be dismissed. *See O'Shea,* 414 U.S. at 494 ("if none of the named Plaintiffs purporting to represent a class establishes the requisite of a case or controversy with the defendants, none may seek relief on behalf of himself or any other member of the class"); *Lierboe v. State Farm Mut. Auto. Ins. Co.*, 350 F.3d 1018, 1022 (9th Cir. 2003) (if named plaintiff lacks standing, class action complaint must be dismissed); *LoBue v. Christopher*, 82 F.3d 1081, 1085 (D.C. Cir. 1996) (same).

---

[15] Additionally, because Plaintiffs have not even alleged that they suffered any injury, *see infra* Part III.A.1.(a), they also fail to satisfy the "concrete" and "particularized" prong of the standing injury in fact requirement. *E.g.*, *Clapper*, 133 S. Ct. at 1138.

### B.    The Requested Relief Is Not Ripe

To be justiciable, a case must also be "ripe."  *See Texas v. United States*, 523 U.S. 296, 300 (1998).  A case is not ripe if it "rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all."  *Id.* (quotations omitted); *accord Rock Energy Coop. v. Vill. of Rockton*, 614 F.3d 745, 748 (7th Cir. 2010) (ripeness bars a plaintiff "from asserting an injury that depends on so many future events that a judicial opinion would be advice about remote contingencies") (citation omitted).  To be ripe, a case must also involve an "immediate harm with a 'direct effect on the . . . plaintiffs.'" *Grand Lodge*, 185 F. Supp. 2d at 17-18 (quoting *Texas*, 523 U.S. at 301).

For the reasons described (*supra* at 13-16), Plaintiffs' alleged harm is not immediate and is based on numerous contingencies:  (1) under the current situation, TWU-American mechanic negotiations will not occur any time soon, (2) a Joint Council may replace TWU as bargaining representative for the AA mechanics (before any further overall CBA M&R negotiations with AA occur), (3) there are potentially two NMB representation votes for determining the AA M&R bargaining representative (also before any further negotiations occur), and (4) there will be review and rulings regarding an American-US Airways merger.  Given this, Plaintiffs cannot establish that their claims are ripe for review.  *Grand Lodge*, 185 F. Supp. 2d at 18 ("in light of the conjectural nature of the plaintiff's future injuries, the plaintiff would be unable to demonstrate ripeness"); *see Auerbach v. Bd. of Educ. of the Harborfields Cent. School Dist.*, 136 F.3d 104, 109 (2d Cir. 1998) (the ripeness doctrine is "intended to prevent adjudication of issues that may never arise").

### C.       The Requested Relief Conflicts with Labor Law and NMB Jurisdiction

Plaintiffs' request for a broad prospective injunction against future TWU actions in negotiations is also prohibited by Section 9 of the Norris-LaGuardia Act, 29 U.S.C. § 109.[16] Under this provision, a court must issue "the narrowest possible injunction necessary to effectively safeguard the plaintiff's rights," and prospective injunctions may issue only if defendant has engaged in "pattern of" illegal activity that is "likely to continue" and is "limited to specifically identified areas of dispute which already have been adjudicated."  *Southern Ohio Coal v. UMW*, 551 F.2d 695, 710 (6th Cir. 1977).  *See also Virginian Ry. v. System Fed'n No. 40*, 300 U.S. 515, 563 (1937) ("The evident purpose of [section 9 of the Norris-LaGuardia Act is] . . . to confine the injunction to the particular acts complained of and found by the court."); *IAM v. Eastern Air Lines*, 849 F.2d 1481, 1485 (D.C. Cir. 1988) ("injunctions in cases involving or growing out of labor disputes must take a rifle-shot, rather than a shotgun, approach"); *Burlington N. & Santa Fe Ry. Co. v. BMWE*, 93 F. Supp. 2d 751, 758-59 (N.D. Tex. 2000).

Here, the prospective injunctive relief sought by Plaintiffs is not based on any allegations of a "pattern" of purported TWU improper activity that is "likely to continue"; further, the relief sought is broad and thus for this reason as well is contrary to Norris-LaGuardia Section 9.

In addition, Plaintiffs' requested injunction acts to enmesh this Court in TWU's conduct of negotiations contrary to the well-established policy of avoiding judicial interference

---

[16] This case represents a Norris-LaGuardia "labor dispute" because it involves a controversy "concerning the association or representation of persons" at an employer.  29 U.S.C. § 113(c); *see id.* § 113(a) (actions grows out of labor dispute if it is between one or more employees and a representative of employees); *see also Green v. Obergfell*, 121 F.2d 46, 50-52 (D.C. Cir. 1941).

in internal union affairs – here, how TWU will conduct its negotiations.[17]  In addition, the

injunction – seeking to circumscribe TWU's handling of negotiation – is at odds with the RLA,

which governs collective bargaining here, 45 U.S.C. §§181, 182.  For example, a requirement

that – as Plaintiffs request –TWU always negotiate with a "full [negotiating committee]

complement" (with certain exception) or notify all negotiating committee members, including all

subcommittee members, ahead of time "of *any* . . . caucuses with the company," FAC at 15-16

(emphasis added), could interfere with TWU's RLA duty as the collective bargaining

representative of the AA M&R craft or class "to exert every reasonable effort to make . . .

agreements" with American, 45 U.S.C. §152 First, and to "confer" with AA with respect to "[a]ll

disputes," 45 U.S.C. §152 Second.  The broad control over TWU's negotiations is also contrary

to the "wide latitude" that RLA unions "need for the effective performance of their bargaining

responsibilities," *Air Line Pilots Ass'n v. O'Neill*, 499 U.S. 65, 78 (1991); *see also Swatts v.*

*USW*, 808 F.2d 1221, 1227 (7th Cir. 1986) (to "respond to the exigencies of the contract

negotiating process, a union must have broad discretion to determine bargaining strategy").[18]

        Moreover, the requested relief – by interfering with TWU's RLA-based

prerogatives in choosing the appropriate negotiation approach – strips TWU of its entitlement to

exercise its full NMB certification rights; this necessarily limits the scope of the NMB

certification of TWU as the M&R bargaining representative (*supra* at 3) and thus interferes with

---

[17] *Gurton v. Arons*, 339 F.2d 371, 375 (2d Cir. 1964) (unions should be "free from officious
intermeddling by the courts"); *Green*, 121 F.2d at 55 (same); *Local 48 v. Carpenters*, 920 F.2d
1047, 1051 (1st Cir. 1990); *Shelley v. Am. Postal Workers Union*, 775 F. Supp. 2d 197, 207
(D.D.C. 2011) ("Federal courts have applied a long-standing policy of avoiding judicial
interference in a union's self-governance and internal affairs.").

[18] At times, unions need to respond quickly to carrier demands – to serve the interests of its
members.  *See Marcoux*, 645 F. Supp. 2d at 78, 94-95.  Plaintiffs' requested relief, if imposed,
could  interfere with a TWU response under such exigent circumstances.

the NMB's exclusive jurisdiction over representation matters.  *See, e.g.*, *Switchmen's Union v. NMB*, 320 U.S. 297, 300 (1943).

*      *      *

For all of these reasons, Plaintiffs' requested relief is defective and shows that their action should be dismissed.  The broad prospective relief requested by Plaintiffs – contingent on further events – is contrary to standing, ripeness and labor law requirements.

## III.    PLAINTIFFS HAVE FAILED TO STATE A CLAIM UNDER RULE 12(b)(6)

Even if Plaintiffs had standing and their requested relief presented a ripe matter that was also in accord with labor law tenets, the Amended Complaint still warrants dismissal as Plaintiffs have failed to state a DFR or LMRDA claim.

### A.    Plaintiffs' DFR Claim Fails As A Matter Of Law

A claim that a union breached its DFR must contain allegations that satisfy two elements:  *First*, the allegations must set forth a plausible claim that the union engaged in wrongful conduct; that is, conduct that was "wholly 'irrational' or 'arbitrary,'" discriminatory or taken in bad faith.  *See O'Neill*, 499 U.S. at 70 (1991) (citation omitted); *Marquez v. Screen Actors Guild*, 525 U.S. 33, 44 (1998).  *Second*, the allegations must establish a plausible contention that the union's alleged wrongful conduct *caused a direct injury* to Plaintiffs.  *See Hines v. Anchor Motor Freight, Inc.*, 424 U.S. 554, 568 (1976); *Deboles v. Trans World Airlines, Inc.*, 552 F.2d 1005, 1019 (3d Cir. 1977); *Spellacy v. Air Line Pilots Ass'n*, 156 F.3d 120, 130 (2d Cir. 1998); *Anderson v. United Paperworkers Int'l Union*, 641 F.2d 574, 578-79 (8th Cir. 1981); *Ackley v. Western Conference of Teamsters*, 958 F.2d 1463, 1472 (9th Cir. 1992); *Acri v. Int'l Ass'n of Machinists*, 781 F.2d 1393, 1397 (9th Cir. 1986); *Williams v. Romano Bros. Beverage Co.*, 939 F.2d 505, 508 (7th Cir. 1991).  The Amended Complaint fails to allege a cognizable DFR claim (in FAC Count I) as it fails to set forth allegations of TWU wrongful

20

conduct or that any such conduct caused Plaintiffs any injury. *See generally ALPA v. DOT*, 880 F.2d 491, 499 (D.C. Cir. 1989) (employee asserting a DFR breach must show both wrongful union conduct and that this conduct caused him injury (citing, among other cases, *Hines* and *Deboles*)).

**1. Plaintiffs' Failure to Allege That TWU Caused Them Harm is Fatal to Their DFR Claim**

For two reasons, the Amended Complaint's DFR claim is deficient regarding the "causation/damages" DFR element; in other words, the Amended Complaint fails to set forth allegations which if established would show that TWU's alleged misconduct caused harm to Plaintiffs.

**(a) Plaintiffs Do Not Allege That They Suffered Any Injury Caused By Purported TWU Misconduct**

In the Amended Complaint, Plaintiffs do not identify *any* injury they purportedly suffered as a result of alleged TWU improper conduct.

Without a "tangible" injury to Plaintiffs – purportedly caused by union misconduct – a DFR claim cannot survive, *Deboles*, 552 F.2d at 1017, 1018 n.26, 1019-20 (DFR claim must establish "concrete injury [to plaintiffs] caused by" union misconduct); *supra* at 20 (citing additional cases). *See also Dura Pharmaceuticals, Inc. v. Brouda*, 544 U.S. 336, 346-48 (2005) (complaint legally insufficient because it does not state what plaintiffs' "economic loss might be" and, therefore fails to adequately allege that defendants caused plaintiffs harm). That is, Plaintiffs must show "resultant damages" from the union's wrongful conduct "as an element of liability." *Deboles*, 552 F.2d at 1018;[19] *see Rakestraw v. United Airlines*, 981 F.2d 1524, 1534 (7th Cir. 1992) (a "wrong is actionable only when it causes injury").

---

[19] For example, courts have repeatedly held that a discharged employee claiming a union breached its DFR in handling his grievance/arbitration against the employer must show that the

21

Here, Plaintiffs' Amended Complaint contains two allegations of purported harm; but neither presents a colorable claim that any of the Plaintiffs were injured by any alleged wrongful TWU conduct.

*First*, Plaintiffs baldly assert that TWU negotiated "benefits and improvements" in the M&R CBA for the Tulsa base overhaul mechanics "at the expense of" the other AA M&R mechanics, FAC ¶48; but Plaintiffs neither identify these CBA "benefits and improvements" nor, more importantly, describe in any way how Plaintiffs were somehow purportedly injured as a result of the TWU negotiation of these CBA "benefits and improvements." FAC ¶¶2-6, 48. *See Twombly*, 550 U.S. at 555 ("plaintiff's obligation to provide 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions" (citation omitted)); *Iqbal*, 556 U.S. at 678 (conclusory allegations are insufficient to support claim).

*Second*, Plaintiffs contend that, in going from American's LBO1 to LBO2, TWU negotiated a "shift[]" in "job losses" from the favored AA Tulsa mechanics to the disfavored AA non-Tulsa mechanics, *see* FAC ¶¶49, 50. But Plaintiffs nowhere allege that they themselves were *actually injured* by these alleged job loss "shifts" or, more particularly, whether (or how) they

discharge by the employer violated the CBA because, in the absence of a CBA breach, there is no harm to the employee and the alleged DFR breach could not have injured the employee. *E.g., Teamsters Local 391 v. Terry*, 494 U.S. 558, 564 (1990) (to establish DFR violation, plaintiff must prove that "the employer's action violated the terms of the collective-bargaining agreement"); *DelCostello v. IBT*, 462 U.S. 151, 164-65 (1983) (employee must show both that "discharge was contrary to the contract" and union breached DFR; and, even if he sues only union "the case he must prove is the same"); *Hines*, 424 U.S. at 568 (union's breach of DFR must be found to have "contributed to the erroneous outcome of the contractual proceedings"); *Humphrey v. Moore*, 375 U.S. 335, 350-51 (1964) (employees must demonstrate "that the result would have been different had the matter been differently presented"); *Skillsky v. Lucky Stores, Inc.*, 893 F.2d 1088, 1095 (9th Cir. 1990) (to establish a DFR breach, plaintiff must show violation of CBA); *USW v. NLRB,* 692 F.2d 1052 (7th Cir. 1982) (same); *Gwin v. Nat'l Marine Engineers Beneficial Ass'n,* 966 F. Supp. 4, 7 (D.D.C. 1997) (same), *aff'd*, 159 F.3d 636 (D.C. Cir. 1998); *Marcucilli v. Am. Airlines,* No. 04-40244, 2007 WL 713146, at *7-8 (E.D. Mich. Mar. 7, 2007); *George v. USPS*, No. 04-cv-1073, 2006 WL 798924, at *12 (D. Conn. Mar. 28, 2006).

22

were included in any resulting "*increased*" job losses among the non-Tulsa mechanics, *see* FAC

¶¶2-6, 50, 51.  Instead, Plaintiffs acknowledge that they are "[un]aware" of any damage claim

"stemming from jobs eliminated as a result of the" challenged CBA negotiations and that such

"claims appear speculative." Plaintiffs' Memorandum of Law in Support of Their Motion for

Class Certification ("Pl. Class Br.") at 23-24 [Docket No. 9-1].  *See Deboles*, 552 F.2d at 1018

n.26 (DFR claim fails because in part "speculative" injury claim "does not suffice to demonstrate

concrete injury caused by" union misconduct); *see Barrett v. Thorofare Markets, Inc.,* 452 F.

Supp. 880, 883 (W.D. Pa. 1978) (no DFR breach where "fact of injury as well as the amount of

damages . . . remain purely conjectural").  Absent specific factual allegations about whether and

how the named Plaintiffs were actually injured, the Plaintiffs have failed to state a plausible DFR

claim.

Plaintiffs also baldly assert that they "suffered injury caused by defendant's

breach," FAC ¶75; this allegation, however, is only a "[t]hreadbare recital[]" of the DFR

causation/harm element, "supported by mere conclusory statements" and thus "do[es] not

suffice" to state a claim.  *Iqbal*, 556 U.S. at 678.

(b)     **Plaintiffs Do Not Allege That "But For" TWU's Actions, They
        Would Have Achieved A Better Agreement**

Even if Plaintiffs could point to some way they were allegedly injured by the

purported TWU improper conduct, their Amended Complaint allegations still fail to surmount a

second DFR "causation" requirement.

Plaintiffs' Amended Complaint turns on the terms of a CBA (the M&R CBA)

which, according to Plaintiffs, was improperly negotiated by TWU, agreed to by the Company,

ratified by the M&R employees, and approved by the bankruptcy court.  FAC ¶¶61, 50-52, 64,

66.  Plaintiffs thus must allege that – assuming arguendo they could identify any resulting injury

23

(which they cannot) – "but for" TWU's purported DFR breach this CBA process would have

turned out differently; this means they must allege that "but for" TWU's purported breach: (1)

American, which was then going through the bankruptcy process, would have accepted M&R

CBA terms (on for example job loss "shifts") more favorable to Plaintiffs (and the purported

class), and (2) the M&R CBA would not have been ratified and approved by the bankruptcy

court. *E.g.*, *Anderson,* 641 F.2d at 579-80 (no DFR breach where plaintiffs have no claim that

"but for" the union's misconduct the "employees would not have ratified" the agreement *and*

would have "obtain[ed] and would have won [additional benefits] from the Company"); *Ackley*,

958 F.2d at 1472 (plaintiffs must prove that "but for" union's misconduct, the injury they

allegedly suffered would not have occurred; that is they must show that (1) absent the

misrepresentations, the outcome of the ratification vote would have been different; *and* that (2)

had it been different, the company would have acceded to the union's demands); *Acri*, 781 F.2d

at 1397 (same); *Spellacy*, 156 F.3d at 130 (given company's position during negotiations, "we

cannot say that [union's] decision not to advocate a seniority-based training system was the

cause of the pilots' injuries"). *See also* cases cited at 20.

　　　　　Plaintiffs assert no such "causation" allegations. As an initial matter, Plaintiffs

have not contended that, but for TWU's alleged bad acts, American would have agreed to some

other proposed "job loss" provisions more favorable for Plaintiffs (and the proposed class). Nor

do Plaintiffs allege that the outcome of the ratification vote on the M&R CBA would have been

different, but for TWU's alleged bad acts related to this vote; in this regard, Plaintiffs allege that

TWU failed to hold an "education" meeting among non-Tulsa mechanics prior to the ratification

vote, FAC ¶¶63, 79; however, even if established, this allegation would not show that the vote

would have been any different (i.e., that the M&R CBA would have been voted down but for

TWU's purported misconduct) as these mechanics already voted "overwhelmingly" against the proposed contract, according to Plaintiffs. *See* FAC ¶65.[20]

Given this, the DFR claim is subject to dismissal.

### 2.     The DFR Allegations Make No Sense

Plaintiffs' DFR claim also fails because they have not stated a colorable claim that TWU engaged in any TWU wrongdoing. More specifically, the claim fails because it is predicated on implausible allegations.

As noted, Plaintiffs' DFR claim rests on the contention that, during Section 1113 negotiations with American, TWU allegedly favored the AA Tulsa mechanics over the non-Tulsa mechanics, *see* FAC ¶¶38, 40, and that this favoritism is allegedly evinced by the job loss "shifting" from Tulsa to non-Tulsa mechanics in going from LBO1 to LBO2, *see* FAC ¶¶38, 40, 50-52; *see also supra* at 23-25 (Plaintiffs provide no viable claim of TWU harmful acts).[21] But

---

[20] Any TWU education meeting for the non-Tulsa mechanics – which would have been aimed at securing pro-ratification votes, FAC ¶¶63, 65 – would logically only have switched mechanic voter sentiment in favor of ratification of the M&R CBA. As a result, Plaintiffs cannot plausibly assert that but for TWU's failure to hold education meetings amongst the non-Tulsa mechanics, "the outcome of the ratification vote would have been different." *Ackley*, 958 F.2d at 1472; *accord Acri*, 781 F.2d at 1397; *Angel v. United Paperworkers Int'l Union (PACE) Local 1967*, 181 L.R.R.M. (BNA) 2485, 2491 (6th Cir. 2007) (it was "too speculative to assume" that, if submitted for ratification, members would have rejected the agreement and, if they did, would subsequently have received additional benefits); *Barrett,* 452 F. Supp. at 883 (same).

[21] Although Plaintiffs toss out various allegations of TWU purported wrongdoing – that, for example, TWU "condoned secret" negotiations by the Tulsa local with American which "violated" policy and rules of the TWU Air Transport Division, that the non-Tulsa negotiators were not permitted to "independently negotiate" with American, and that TWU "ignored the objections" of the non-Tulsa mechanics to Americans proposals, FAC ¶¶53, 55, 57, 59 – the wrongdoing, according to Plaintiffs, was to "penalize[e]" the non-Tulsa mechanics, FAC ¶60. The only non-Tulsa mechanic "penalty" arguably identified in the Amended Complaint – and thus the only TWU wrongful act that had any consequence under the Amended Complaint  – is the "shift" in job losses, *supra* at 23-25.

this "showing" of purported TWU wrongdoing – based on the job loss transfers – does not add up.

According to the Amended Complaint, this job loss "shifting" resulted in the proposed loss of twenty-three (23) non-Tulsa mechanic jobs (three line mechanics *plus* twenty AFW overhaul mechanics) which somehow achieved proposed job savings of 1,459 for the Tulsa mechanics, *see* FAC ¶¶ 50-52.  However, it is simply not "reasonable [to] infer[]" or "plausible" that 23 non-Tulsa job losses somehow were converted into 1,459 Tulsa job gains, *Iqbal,* 556 U.S. at 678, and Plaintiffs' DFR allegations offer no elucidation regarding how the limited number of non-Tulsa possible job losses is linked to the large number of Tulsa possible additional jobs.

Given that Plaintiffs' claim of TWU bad acts rests on an inherently irrational premise – that in negotiations TWU was somehow able to impose 23 job losses on the disfavored non-Tulsa mechanics by a "shifting" 1,459 "job [loss] reduction"  to the Tulsa mechanics, FAC ¶49 – the DFR claim warrants dismissal.  *See First Capital Asset Mgmt. v. Satinwood*, 385 F.3d 159, 180 (2d Cir. 2004) (rejecting claim allegations as "lacking . . . rationality"); *Car Carriers, Inc. v. Ford Motor Co.,* 745 F.2d 1101, 1109 (7th Cir. 1984) (rejecting allegations that were "inherently implausible"); *Acosta Orellana v. CropLife Int'l*, 711 F. Supp. 2d 81, 109 (D.D.C. 2010) (contradictory allegations subject to dismissal); *Mylan Labs v. Akzo, N.V.,* 770 F.Supp. 1053, 1067-68 (D. Md. 1991) (dismissing anti-trust conspiracy claim which was "counterintuitive" and made no "sense").[22]

Moreover, there is an "obvious alternative explanation," *Iqbal*, 556 U.S. at 682, to Plaintiffs' contention that TWU negotiated a "shift" in job losses.  A more sensible account is

---

[22] The court need not "accept as truth" pleadings that "make no sense . . . ."  *Livent, Inc. v. Noteholders Sec. Litig.,*  151 F. Supp. 2d 371, 405-06 (S.D.N.Y. 2001); *cf. RSM Prod. Corp. v. Freshfields Bruckhaus Deringer U.S. LLP*, 682 F.3d 1043, 1051 (D.C. Cir. 2012) (unsupported conclusory allegations not entitled to be assumed true).

that the limited possible loss of jobs in line stations and at AFW and the large possible job gains

at Tulsa are not linked and that instead TWU was able to achieve (to the benefit of all AA

mechanics) job protections, gaining 1,436 mechanic jobs (1,459 *minus* 23, according to FAC ¶¶

51-52), despite the fact that American was in bankruptcy, *supra* at 6 (in its Section 1113

proposal, American was seeking to eliminate approximately 4,200 mechanic jobs).[23]

        In short, Plaintiffs' improbable job "shift" assertion – underpinning their DFR

claim –  shows that Plaintiffs' allegation of TWU wrongdoing "is not a plausible conclusion."

*Iqbal*, 556 U.S. at 682.[24]

*      *      *

        For the reasons set forth above, the Amended Complaint fails to allege a colorable

DFR claim; this claim should therefore be dismissed.

### B.    The Amended Complaint Does Not State an LMRDA Claim

        In Count II of the Amended Complaint, Plaintiffs assert that they were denied a

"meaningful" vote under Section 101(a)(1) of the LMRDA, 29 U.S.C. §411(a)(1), part of Title I

---

[23] Saving 1,436 mechanic jobs certainly "promote[d] the aggregate welfare" of the mechanics in the M&R craft or class – further showing that no DFR breach occurred, *see Rakestraw,* 981 F.2d at 1535.

[24] The DFR also fails to properly allege that the TWU representatives were "hostile" to the non-Tulsa mechanics. The FAC suggests that TWU negotiated with a "broad[] policy of hostility toward [AA] Line Mechanics."  *See* FAC ¶46.  The problem with this conclusory assertion is that it is supported only by allegations of purported "hostile" "comments" directed at "*presidents*" of line mechanic locals, not comments directed against line mechanic employees. FAC ¶¶44-47 (emphasis added).  Plaintiffs moreover have failed to allege that any individual involved in the actual negotiations with American were "hostile" to the line mechanics.  FAC ¶¶ 44-47 (no allegation that President Little or Representative Gillespie who purportedly made the "hostile" comments were involved in the negotiations); *see, e.g.*, *Conn v. GATX Terminals Corp.*, 18 F.3d 417, 420 (7th Cir. 1994) (affirming dismissal of DFR where plaintiff alleged hostility of steward who processed grievance but where decision not to pursue grievance was made by executive board that had no hostility).

of the LMRDA.[25]   For three reasons, dismissal of Plaintiffs' LMRDA claim is warranted (even if Plaintiffs had standing and their clams were ripe).[26]

*First*, Plaintiffs predicate their LMRDA claim on the "negotiations" that somehow "rendered [their] votes . . . meaningless," *see* FAC ¶79.  Section 101(a)(1), however, protects voting rights, not any rights pertaining to negotiations, *see* LMRDA Section 101(a)(1), and Plaintiffs do not identify how the negotiations about which they complain in any way rendered their "votes . . . meaningless," *see* FAC ¶79.  Because Plaintiffs have not asserted that "the union's conduct [in the negotiations] deprived the Plaintiffs of a right *specifically enumerated* [in Section 101(a)(1)]," their LMRDA allegations based on the negotiations are deficient.  *Carothers v. Presser*, 818 F.2d 926, 931 (D.C. Cir. 1987) (emphasis in original).  *See also supra* at 10, 26 (allegations must be plausible to defeat dismissal motion).

*Second*, to the extent Plaintiffs' LMRDA clam is based on the allegation that TWU "fail[ed] to hold meetings" for the non-Tulsa mechanics "to educate members about the proposed contract" prior to the membership vote, *see* FAC ¶63, this too is insufficient to state a Section 101(a)(1) "meaningful vote" claim.

---

[25] Section 101(a)(1) of the LMRDA states that "[e]very member of a labor organization shall have equal rights and privileges within such organization to nominate candidates, to vote in elections or referendums of the labor organization, to attend membership meetings, and to participate in the deliberations and voting upon the business of such meetings, subject to reasonable rules and regulations in such organization's constitution and bylaws."  29 U.S.C. §411(a)(1).

[26] Plaintiffs nowhere allege that they were denied a right to vote that TWU granted to other union members.  *E.g., Calhoon v. Harvey*, 379 U.S. 134, 139 (1964) (Section 101(a)(1) "[p]lainly . . . is no more than a command that members and classes of members shall not be discriminated against in their right to nominate and vote"; it does not provide a remedy for union members who "have been denied no [such] privilege or right . . . which the union has granted to others.").

Section 101(a)(1) rights are "not without limitations," *Carothers v. McCarthy*, 705 F. Supp. 687, 690 (D.D.C. 1989).  As the D.C. Circuit stated:

> Title I of the LMRDA is not a mandate for courts to impose on labor unions whatever procedures or practices they regard as "democratic."  Although the enactment of Title I was certainly propelled by a congressional intent to broaden the democratic features of union governance, Congress did not embrace an amorphous and boundless notion of democracy.  Rather, it enumerated specific rights designed to ensure that unions adhere to certain basic principles.  Those principles must be gleaned from the statute itself; they may not be derived from a court's perception of what union procedures are necessary to guarantee a "fully informed vote."

*Carothers*, 818 F.2d at 934.

Given this instruction, courts in the D.C. Circuit have concluded that any "meaningful" vote right is limited and have found a violation of this LMRDA right in situations such as, unlike here, the union made it more difficult to prevail on a vote by improperly raising the percentage required to win, *Bunz v. Moving Picture Ops. Local 224*, 567 F.2d 1117, 1122 (D.C. Cir. 1977), failed to timely provide the text and an explanation of the proposed contract and thereby – because of the short time period for voting on the proposed CBA – "deprived [the Plaintiffs] of an opportunity to 'communicate effectively' with the Union membership," *McCarthy*, 705 F.Supp. at 696 (quoting *Presser* 818 F.2d at 932), or provided misleading information or denied the members pertinent information, contrary to the terms of the union constitution, *Bunz,* 567 F.2d at 1121 & n. 22 (citing *Blanchard v. Johnson*, 388 F. Supp. 208, 214 (N.D. Ohio 1975), *aff'd in relevant part,* 532 F.2d 1074 (6th Cir. 1976)).

Plaintiffs' LMRDA allegations do not contain this "critical component" to a meaningful vote claim, *McCarthy*, 705 F. Supp. at 696; the Amended Complaint does not assert that:  TWU changed the voting requirements making it more difficult for Plaintiffs' position on the tentative agreement to prevail in the ratification, they were deprived of the text of the

tentative M&R CBA or, contrary to the TWU Constitution, they were denied pertinent information and, during the vote, were thwarted in their ability to communicate their views to the AA mechanics regarding the tentative M&R CBA.  Plaintiffs may be disappointed with the outcome of the vote, but disagreement with voter preference does not implicate the specific membership voting rights addressed by Section 101(a)(1).  *See Carothers*, 818 F.2d at 934.

Third, even if Plaintiffs were somehow deprived of a meaningful vote, they have not – and could not – allege that the "membership vote . . . [approving the proposed agreement] would have been any different in the absence of the alleged [LMRDA] violation."  *Maoilo v. Klipa*, 655 F. Supp. 1139, 1145 (W.D. Pa. 1987); *see supra* at 24-25 (any absence of education meeting for non-Tulsa mechanics could not have altered ratification results).  Plaintiffs therefore have not set forth a claim that any TWU voting misconduct caused the ratification vote outcome to be different; as a result, their LMRDA claim cannot survive.  *See Maoilo*, 655 F. Supp. at 1145; *see also Rakestraw*, 981 F.2d at 1534.

Because Plaintiffs fail to set forth allegations showing that their membership rights under Section 101(a)(1) were violated, this Court lacks jurisdiction under Fed. R. Civ. P. 12(b)(1) to adjudicate Count II of the Amended Complaint.  *Calhoun v. Harvey,* 379 U.S. 134, 138-39 (1964).

## IV.    THE MATTER SHOULD BE STAYED BECAUSE THE PLAINTIFFS FAILED TO EXHAUST INTERNAL UNION REMEDIES

Article XXIII of the TWU Constitution (referenced in FAC ¶67) provides that before instituting any legal proceeding "against the International Union" based on a challenge to any TWU "action" or "inaction," any member "shall exhaust all available remedies" under the

Constitution.  *See* Winston Decl. 18 (TWU Const. Art. XXIII).[27]  A plaintiff is required to exhaust internal union remedies for both DFR and LMRDA claims.  *See Clayton v. UAW*, 451 U.S. 679, 689 (1981); 29 U.S.C. § 411(a)(4).

Plaintiffs assert that they exhausted their remedies under Article XXIII by filing a complaint with the TWU Secretary-Treasurer for referral to the International Executive Council ("IEC").  FAC ¶67.  The IEC rendered a decision on such complaint on February 26, 2013, and on March 26, 2013 the Plaintiffs filed,[28] as they were required to do under Article XXIII, an appeal of such decision to the TWU International Convention scheduled to commence September 23, 2013.  *See* Winston Decl. Ex. 19 (Local 591 appeal).  The appeal will be heard and decided at the Convention.

In this circumstance, where the Plaintiffs are in the process of exhausting internal union remedies, a process that will be completed within the next three months, the Court should – to the extent it does not dismiss the Amended Complaint for the reasons stated above – stay this action until the exhaustion process is complete.  *See Stevens v. Nw. Ind. Dist. Council of Carpenters*, 20 F.3d 720, 733 (7th Cir. 1994) ("failure to properly exhaust should lead a federal court to stay its hand until exhaustion can be completed (or the dispute resolved in the process)"); *Winter v. Local Union No. 639*, 569 F.2d 146, 149-50 (D.C. Cir. 1977) (granting motion for summary judgment on DFR claim because of failure to exhaust internal union

---

[27] This Constitutional provision may be considered by the Court; the Amended Complaint references the TWU Constitution and asserts that Plaintiffs have exhausted their TWU internal exhaustion requirements, FAC ¶67.

[28] Plaintiff Peterson filed the Article XXIII complaint and appeal.

remedies); *Pierce v. Bahr*, No. Civ. 96-0680, 1996 WL 33675196, at *4 (D.D.C. May 9, 1996)

("it is plainly impermissible for Plaintiffs to ignore intra-union avenues of resolution").[29]

## **CONCLUSION**

For the reasons set forth above, the TWU motion to dismiss or for a stay should

be granted.

Respectfully submitted,                    Dated: July 3, 2013


*/s/ Michael L. Winston*                   */s/ Richard S. Edelman*
Michael L. Winston                         Richard S. Edelman
Evan Hudson-Plush                          O'Donnell, Schwartz & Anderson, P.C.
Cohen, Weiss and Simon LLP                 1900 L Street, N.W., Suite 800
330 West 42nd Street                       Washington, DC 20036
New York, NY 10036                         D.C. Bar #: 416348
(admitted *pro hac vice*)

---

[29] In their Amended Complaint, Plaintiffs have not set forth any basis for why this Court should excuse exhaustion.  *See Clayton*, 451 U.S. at 689; *Winter*, 569 F.2d at 149.