UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **GARY PETERSON, <u>et al.</u>,**<br><br>　　　　Plaintiffs,<br><br>　　　　v.<br><br>**TRANSPORT WORKERS UNION OF AMERICA, AFL-CIO,**<br><br>　　　　Defendant. | Case No. 1:13-cv-00170 (CRC) |

## MEMORANDUM OPINION

This putative class action is the latest skirmish in a long-running dispute among mechanics at American Airlines over which union should represent them. Following American's bankruptcy in November 2011, its mechanics narrowly ratified a collective bargaining agreement between the airline and the Transportation Workers Union ("TWU"). A group of American mechanics who would prefer to be represented by another union—the American Mechanics Fraternal Association ("AMFA")—has filed suit over the process that led to the ratification of that agreement. They contend that in negotiating the agreement with the airline, TWU leadership favored mechanics who work at American's principal maintenance base in Tulsa, Oklahoma at the expense of Plaintiffs and others who work elsewhere. This preferential treatment, they allege, breached the union's duty of fair representation and violated their voting rights under the Labor-Management Reporting and Disclosure Act.

Plaintiffs do not seek monetary damages or the invalidation of the collective bargaining agreement. They request instead a declaratory judgment and permanent injunction requiring the TWU to refrain from the alleged unfair practices in future contract negotiations. Because

Plaintiffs have not identified any impending injury that could be prevented by the relief they seek, the Court concludes that they lack standing to bring this suit. For similar reasons, the Court also concludes the suit is unripe. The Court therefore will grant the TWU's motion to dismiss the complaint for lack of subject matter jurisdiction.

**I.      Background**

Plaintiffs and their proposed class members are part of a "craft or class" of mechanics and related employees at American Airlines.[1] They and workers in six other employee classifications are represented by the TWU. Second Amended Complaint ¶ 18 ("SAC"). Roughly half of the mechanics and related employees perform heavy maintenance and overhaul aircraft at American's primary maintenance base in Tulsa, Oklahoma. SAC ¶ 24. The others work at other maintenance bases in Fort Worth or Dallas, Texas, or perform lighter "line" service at airports served by American throughout the country. SAC ¶¶ 22–23.

Soon after filing for bankruptcy protection in November 2011, American took steps to reject its collective bargaining agreement ("CBA") with the TWU and renegotiate a modified agreement. American's first "last best offer" during the negotiations proposed to eliminate almost 4,000 line and maintenance base jobs. SAC ¶ 57. This offer failed a ratification vote. SAC ¶ 58. After further negotiations, American's second "last best offer" proposed to save 1,439 jobs at the Tulsa maintenance base from the 2,358 that would have been eliminated under the prior offer. SAC ¶ 60. Non-Tulsa maintenance base workers and line mechanics, however, saw their job losses increase slightly from the first to the second offer. SAC ¶ 62. Largely on the support of employees at the Tulsa maintenance base, a CBA reflecting American's second offer was ratified by the narrowest of margins: 50.25% to 49.75%. SAC ¶ 78. The CBA went

---

[1] A "craft or class" under the Railway Labor Act, 45 U.S.C. § 151 et seq., which governs American's relationship with its mechanics, is similar to a bargaining unit under the National Labor Relations Act, 29 U.S.C. § 141 et seq.

into effect in the fall of 2012 following bankruptcy court approval.  SAC ¶ 80.  The agreement runs through September 2018 and will not be subject to renegotiation until September 2016.  Def.'s Mot. Dismiss Ex 12.

The CBA negotiations described above followed a history of sparring between the TWU and AMFA.  In 1998, 2003, and earlier in 2012, AMFA had organized campaigns to replace TWU as the collective bargaining representative of American's mechanics and related employees.  SAC ¶¶ 26, 33.  See Opinion and Order, Schalk v. Transp. Workers Union, No. 03-804, 2007 WL 1310171, at *1 (S.D.N.Y. May 3, 2007) (describing a bitter rivalry between AMFA and TWU over representation of American mechanics).  Each of those drives failed, according to Plaintiffs, because the Tulsa mechanics consistently opposed any switch to AMFA.  SAC ¶¶ 24, 33.  Several TWU members have been removed from leadership positions in the union due to their public support of AMFA.  SAC ¶¶ 30–32.

Against that historical backdrop, Plaintiffs allege the TWU engaged in a number of unfair practices during the 2012 CBA negotiations to protect its supporters in Tulsa and inflict disproportionate losses on what it viewed as troublesome dissenters.  They claim TWU leadership was "openly hostile" during the negotiations to the presidents of the non-Tulsa local unions, whom it considered to be loyal to AMFA.  SAC ¶ 42.  Plaintiffs also contend that the TWU allowed the Tulsa local to negotiate directly with American bargaining representatives, resulting in reduced job losses and improved working conditions, while other locals were denied this access.  SAC ¶¶ 49, 64.  When it came time for ratification, Plaintiffs maintain the TWU refused to hold meetings outside the Tulsa base to educate members about the proposed offer.  SAC ¶ 77.  The TWU's "fail[ure] to devote time and effort" on behalf of the line mechanics and non-Tulsa maintenance workers, according to Plaintiffs, resulted in a contract with inferior work

rules in areas such as overtime and vacation days, loss of seniority, and increased job losses for those whom TWU leadership perceived were supporting AMFA. SAC ¶¶ 73, 74, 85.

Plaintiffs filed suit in February 2013. After an interim amendment, they filed a second amended complaint in August 2013 alleging the TWU's actions breached the union's duty of fair representation to them and other putative class members. See Vaca v. Sipes, 386 U.S. 171, 177 (1967) (unions have a duty "to serve the interests of all members without hostility or discrimination towards any, to exercise its discretion with complete good faith and honesty, and to avoid arbitrary conduct"). Plaintiffs also allege that the TWU's conduct during the CBA ratification process violated their right under the Labor-Management Reporting and Disclosure Act ("LMRDA") to have a "meaningful" vote in union elections. See Bunz v. Moving Picture Mach. Operators' Protective Union Local 224, 567 F.2d 1117, 1121 (D.C. Cir. 1977).

Soon after Plaintiffs filed suit, American announced a proposed merger with US Airways. The merger was consummated in December 2013. Def.'s Opp'n to Pls.' Second Mot. Leave to File Supplement Ex. A, at *1. In the wake of the merger, the TWU entered into an association with the International Association of Machinists ("IAM"), which represents mechanics and other workers at US Airways. Id. at *2. The two unions petitioned the National Mediation Board on August 6, 2014 for a finding that the merged airline is operating as a single carrier. Id. at *1. This finding is a first step to certifying a TWU-IAM joint council as the exclusive bargaining representative of the combined airline's mechanics.

The TWU has moved to dismiss the second amended complaint under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). At the threshold, the union contends that the Court lacks subject matter jurisdiction over the case because Plaintiffs cannot satisfy the injury-in-fact requirement of Article III standing in light of the numerous contingencies and uncertainties

surrounding the timing of any future bargaining with the merged airline and the role of the TWU in that bargaining.  The union points out that there are currently no planned system-wide contract negotiations between the TWU and American and, due to the uncertainty over who will be representing the combined carrier going forward, there may never be.  It also asserts that the TWU has installed new leadership since the last round of collective bargaining that could take a different negotiating position from prior leadership.  The TWU thus argues the Plaintiffs have failed to allege a substantial likelihood of future harm as required to establish standing.  It asserts, in a similar vein, that the action is unripe.  As for the merits, TWU contends that Plaintiffs have failed to plead facts that would support a finding that the union breached its duty of fair representation or violated their voting rights under the LMRDA.  Because the Court will dismiss the second amended complaint for lack of standing, it does not address the union's arguments that Plaintiffs failed to state a claim under Rule 12(b)(6).

**II.    Analysis**

    A.    <u>Standing</u>

Under Federal Rule of Civil Procedure 12(b)(1), a plaintiff bears the burden of establishing jurisdiction by a preponderance of the evidence.  <u>Lujan v. Defenders of Wildlife</u>, 504 U.S. 555, 561 (1992).  The Court must accept all factual allegations as true, and plaintiffs receive the benefit of all favorable inferences that can be drawn from the alleged facts.  <u>Little v. Fenty</u>, 689 F. Supp. 2d 163, 167 (D.D.C. 2010).  But a court scrutinizes factual allegations more closely in resolving a Rule 12(b)(1) motion than in resolving a Rule 12(b)(6) motion to dismiss.  <u>Id.</u>  A court may also examine evidence outside the complaint to decide a Rule 12(b)(1) motion to dismiss.  <u>Jerome Stevens Pharm., Inc. v. Food & Drug Admin.</u>, 402 F.3d 1249, 1253 (D.C. Cir. 2005).

To establish standing, a plaintiff must allege: (1) an "injury in fact" that is "concrete and particularized" and "actual or imminent," (2) a causal connection between the injury and the offensive conduct, and (3) likely redressability. Lujan, 504 U.S. at 561. In cases seeking an injunction or other prospective relief, a plaintiff must identify a threatened injury that is "certainly impending" and not simply "possible." Clapper v. Amnesty Int'l USA, 133 S. Ct. 1138, 1147 (2013).[2] "Certainly impending" does not mean that the injury must be *certain* to occur. Id. at 1150 n.5 ("Our cases do not uniformly require plaintiffs to demonstrate that it is literally certain that the harms they identify will come about."). But there must be a "substantial risk" that the alleged injury will occur. Id. The threatened injury must also be "imminent" in the temporal sense. McConnell v. Fed. Election Comm'n, 540 U.S. 93, 226 (2003) (holding that a political candidate's alleged injury was "too remote" to satisfy Article III standing because it would not occur until his reelection campaign, if at all). A court may reasonably infer future injury when a party is openly committed to the action challenged by the plaintiff. E.g., Monsanto Co. v. Geertson Seed Farms, 561 U.S. 139, 152–53 (2010); Sierra Club v. Jewell, 764 F.3d 1, 7 (D.C. Cir. 2014). But an alleged injury cannot support standing if it is based primarily on conjecture about future actions and responses. E.g., DaimlerChrysler Corp. v. Cuno, 547 U.S. 332, 344 (2006).

Plaintiffs have identified three alleged future injuries from which they seek relief. The first, which Plaintiffs outline in the prayer for relief section of the second amended complaint, is discriminatory conduct during future negotiations between the TWU and American (or its

---

[2] Plaintiffs' request for a declaratory judgment does not relieve them from pleading impending injury. The Declaratory Judgment Act widens the range of remedies a federal court may order, but does not enlarge federal jurisdiction. Grand Lodge of Fraternal Order of Police v. Ashcroft, 185 F. Supp. 2d 9, 15 n.4 (D.D.C. 2001). Therefore a plaintiff seeking a declaratory judgment must still present a "substantial controversy . . . of sufficient immediacy and reality" in order to have standing. Fed. Exp. Corp. v. Air Line Pilots Ass'n, 67 F.3d 961, 964 (D.C. Cir. 1995).

successor) concerning a new CBA or amendments to the present agreement. SAC ¶ D. The second is unfair treatment during negotiations over a new CBA between a potential TWU-IAM joint council and the now-merged airline. Pls.' Opp'n Mot. Dismiss at 16. And the third, which Plaintiffs raise for the first time in their opposition papers, is bias against them in connection with day-to-day implementation of the existing CBA. Id. at 13–16. The Court will apply the standing principles discussed above to each of these alleged future injuries.

      i.      System-Wide CBA Negotiations Between the TWU and American

The crux of Plaintiffs' complaint is that the TWU favored Tulsa-based mechanics in its negotiations with American over the current CBA. They therefore seek to prevent the TWU from engaging in similar favoritism in future system-wide negotiations.[3] These allegations, however, do not describe a substantially likely future injury for two reasons. First, as noted above, the TWU and IAM have petitioned the National Mediation Board to find that the merged American/US Airways is operating as a single carrier. Should the Board make that finding—and Plaintiffs do not suggest it will not—the TWU and IAM have indicated they will form a joint council to be the exclusive bargaining representative of the combined airline's mechanics.[4] The

---

[3] The Plaintiffs' primary focus on injuries stemming from further system-wide bargaining is evident from the prayer for relief in the second amended complaint. Plaintiffs request a permanent injunction requiring the TWU to "[r]efrain from participating in secret bargaining sessions with the company that are undisclosed to, or unauthorized by, any full negotiating committee[; and] . . . [r]efrain from negotiating with the company with less than the full complement of any constitutionally designated negotiating committee." SAC ¶ D. The injunction would also require the TWU to "[p]rovide reasonable advance notice to all designated members of the full or any sub negotiating committees, of any bargaining sessions[; and] . . . hold meetings at all stations, line or base, if any meetings are held at any station, for the purpose of educating members about the contents of a proposed contract or amendment in advance of a ratification vote." Id. All of these requirements relate only to future system-wide bargaining.

[4] Although Plaintiffs do not dispute the merged airline is operating as a single carrier, they are contesting before the National Mediation Board whether the joint council may be listed as the incumbent on a single carrier union election ballot, an advantage they describe as "virtually insuperable." Pls.' Second Mot. Leave to File Supplement Ex. 9. Plaintiffs' challenge before the

TWU itself would no longer serve that role and, therefore, could not engage in the types of unfair practices that Plaintiffs seek to enjoin.

Second, the current CBA will not expire until September 2018, and the union cannot seek to amend it before September 2016. As a result, even if the TWU remained the exclusive bargaining representative of the combined airline's mechanics, the potential for system-wide unfair negotiating practices will not arise until sometime after 2016. Plaintiffs have not alleged when the TWU or the airline intends to reopen negotiations, what the bargaining position of the TWU will be, or how that position will harm the Plaintiffs' interests. The alleged injury is therefore not sufficiently "imminent" or "impending" to confer standing. McConnell, 540 U.S. at 226.

Given the distinct possibility that the TWU will not be the exclusive bargaining representative in negotiations over the next CBA, and the lack of information regarding when and how negotiations can be expected to unfold, Plaintiffs have not demonstrated a substantial risk that TWU's alleged favoritism towards the Tulsa mechanics in the last round of system-wide bargaining will reoccur. This source of alleged future injury is therefore insufficient to establish standing.

    ii. <u>System-Wide CBA Negotiations Between a Joint Council and the Airline</u>

In response to the TWU's argument that any risk of future injury would be reduced by the formation of a joint council, Plaintiffs contend that the TWU, as a member of the joint council, would nevertheless be in a position to influence future system-wide negotiations to Plaintiffs' detriment. Pls.' Opp'n Mot. Dismiss at 19–20. The distribution of powers in and composition of any joint council have yet to be determined, however. Plaintiffs have not alleged who the TWU

---

Board only heightens the uncertainty regarding what entity will represent mechanics at the merged airline going forward.

representatives on the joint council will be; how the TWU's stance might be adverse to the Plaintiffs' interests; or, even if it proves to be adverse, whether the TWU representatives would be in a position to compel the joint council to engage in the types of unfair practices alleged in the second amended complaint. Given these uncertainties, the possibility that the TWU might harm the Plaintiffs via its influence over any future joint council is too speculative to satisfy Article III standing requirements.[5]

### iii. "Day-to-Day" Negotiations over Implementation of the Current CBA

Finally, Plaintiffs oppose the union's motion to dismiss on the grounds that the relief they seek is necessary to protect them from unfair treatment in the administration of the current CBA. Emphasizing the general principle that collective bargaining is an ongoing, day-to-day process, e.g., Conley v. Gibson, 355 U.S. 41, 46 (1957), Plaintiffs assert that continuing negotiations between the TWU and American "on a variety of subjects" expose them to harm. Pls.' Opp'n Mot. Dismiss at 13. Yet the second amended complaint fails even to mention any specific day-to-day negotiations, let alone allege injuries stemming from them. Although the Court may examine evidence outside the complaint to decide a Rule 12(b)(1) motion to dismiss, see Jerome Stevens Pharmaceuticals, 402 F.3d at 1253, Plaintiffs still have not meet their burden to allege likely injury arising from day-to-day representation.

In support of their allegations of day-to-day harm, Plaintiffs quote excerpts from several "letters of memorandum" concerning issues the parties apparently left open for further discussion during the 2012 CBA negotiations. As the TWU points out, however, the portions of the letters quoted by Plaintiffs reveal that the covered topics may never be the subject of negotiations. Def.'s Reply Mot. Dismiss at 4 n.16 (Letter 9 ("referring to a Committee that *may* 'recommend

---

[5] The Court notes that the requested declaratory judgment and injunction against the TWU would not bind any future joint council, which would be a different entity.

possible changes') . . . ; Letter 15 (recognizing need for negotiations '*if* the Company designs a schedule that consists of more than an eight (8) hour workday') . . . ; Letter 18 (stating that the parties '*may revisit* [certain] practices *if necessary*'")) (emphasis added).[6]  Plaintiffs do not allege that either side intends to open negotiations over the topics covered by these letters, or, if it did, when those negotiations might occur or what their outcome might be.

The TWU also contends that any day-to-day negotiations on topics left open in the CBA would be conducted by TWU locals, which are not hostile to Plaintiffs.  Indeed, two of the Plaintiffs are presidents of local unions.  Id. at 4–5; Drummond Decl. ¶ 3, Jan. 15, 2014.  Plaintiffs counter that the national union would nonetheless have veto power over local decisions.  In support of this argument, Plaintiffs cite a June 2014 letter from TWU International to two union locals ordering them to cease negotiations with the merged airline.  Pls.' Opp'n Mot. Dismiss Ex. 6.  Plaintiffs argued at the hearing that this letter demonstrates that TWU refuses to let union locals conduct negotiations.  The letter, however, concerned bargaining over a new general contract, not local work arrangements.  Id.  It therefore does not rebut the union's argument that authority over day-to-day CBA implementation lies with the locals.  Given the uncertainty regarding the likelihood of future discussions under the letters of memorandum and the degree of local control over such day-to-day contract administration, Plaintiffs have not established that the letters of memorandum give rise to a "substantial risk" of future injury.  Clapper v. Amnesty Int'l USA, 133 S. Ct. 1138, 1150 n.5 (2013).  In sum, because none of the Plaintiffs' alleged future injuries is "certainly impending," they have not met their burden to establish standing.

---

[6] Aside from Letter of Memorandum 8, Pls.' Opp'n Mot. Dismiss Ex. 8, which merely lists local letters of agreement that are no longer in force, Plaintiffs did not include these letters of memorandum as exhibits to their opposition brief, so the complete letters are not a part of the record before the Court.

B.      Ripeness

This case is also unripe.  Article III prohibits "courts from issuing advisory opinions on speculative claims."  Am. Tort Reform Ass'n v. Occupational Safety & Health Admin., 738 F.3d 387, 396 (D.C. Cir. 2013).  Thus, the Court may not entertain a claim unless it is constitutionally ripe.  Nevada v. Dep't of Energy, 457 F.3d 78, 83 (D.C. Cir. 2006).  The ripeness doctrine requires the Court to examine "the 'fitness of the issues for judicial decision' and the 'hardship to the parties of withholding court consideration.'"  Id. (quoting Abbott Labs. v. Gardner, 387 U.S. 136, 149 (1967)).

Here, the ripeness analysis overlaps substantially with the standing inquiry discussed above; the lack of an impending injury means this Court does not have jurisdiction under Article III.  The Ninth Circuit recently affirmed the dismissal of a similar case due to lack of ripeness.  Addington v. U.S. Airline Pilots Ass'n, 606 F.3d 1174 (9th Cir. 2010).  In that matter, the union was "constitutionally committed" to a bargaining position in upcoming CBA negotiations that the plaintiffs considered adverse to their interests.  Id. at 1177.  The Ninth Circuit nevertheless found that multiple contingencies—concerning what proposal would be acceptable to the airline and whether members would ratify it—made the claims unduly speculative.  Id. at 1179–80.  Here, system-wide negotiations may not reoccur as alleged, or at all, and there are no concrete effects or actions to evaluate against the union's obligations.  The second amended complaint is therefore unripe for adjudication.

**III.    Conclusion**

For the foregoing reasons, the Court will grant the TWU's Motion to Dismiss the complaint.  The TWU's motions to supplement the record also will be granted.  Plaintiffs' motion to certify the class will be denied as moot.  The Court will issue a separate Order consistent with this Opinion.

                                                                                       _____
                                                                                       CHRISTOPHER R. COOPER
                                                                                       United States District Judge

Date:   December 1, 2014